**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LEAH MICHELE BROWN,** | ) | |
| **ID # 43650-177,** | ) | |
| **Movant,** | ) | **No. 3:14-CV-4031-D (BH)** |
| **vs.** | ) | **No. 3:11-CR-0249-D (4)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody 28 U.S.C. § 2255*, received November 14, 2014 (doc. 2), should be **DENIED** with prejudice.

**I.  BACKGROUND**

Leah Michele Brown (Movant) challenges her federal conviction and sentence in Cause No. 3:11-CR-249-D(4).  The respondent is the United States of America (Government).

On October 19, 2011, Movant was charged by superseding indictment with conspiracy to commit theft from a program receiving federal funds in violation of 18 U.S.C. §§ 371, 666(a)(1)(A). (*See* doc. 27.)[1]  She pled not guilty and was tried before a jury.  The evidence at trial established a check-cashing scheme whereby a claims adjuster for the City of Garland submitted false claims against the City, which then issued checks.  The checks were made payable to Movant, other co-conspirators, and fictitious payees, who deposited or cashed the fraudulently-obtained checks. Movant recruited family members, friends, and associates who were also used as payees for the

---

[1]  Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:11-CR-249-D(4).

checks. She was involved in the scheme from 2005 until March 2008. (*See* doc.90-1 at 5-10;[1] *see also United States v. Brown*, 727 F.3d 329, 333-42 (5th Cir. 2013).) The jury convicted Movant on February 2, 2012.[2] (*See* doc. 74.)

### A.    <u>Presentence Report</u>

On March 22, 2012, the United States Probation Office (USPO) filed a Presentence Report (PSR) that applied the 2011 United States Sentencing Guidelines Manual (USSG). (*See* doc. 90-1 at 11, ¶ 31.) The PSR reflected that Movant was the payee on two city checks she negotiated, which totaled $11,275. There were also 16 city checks made payable to individuals recruited by and linked to Movant that totaled $131,279.48, which the PSR found were reasonably foreseeable to Movant. It attributed a total loss amount of $142,554.48 to her. (*See id*. at 10, ¶ 26.)

The PSR calculated a base offense level of 6 because the statutory maximum term of imprisonment was 5 years. (*See id*. at 12, ¶ 33.) The loss amount was more than $120,000, but less than $200,000, so it added 10 levels for an offense level of 16. (*See id*.) It added three levels based on Movant's role in the offense, for a total offense level of 19, with a guideline range of 30 months to 37 months. (*See id*., ¶¶ 36, 41; *id.* at 19, ¶ 76.)

Movant objected to the loss amount. (*See* doc. 96.) She argued that she did not supply other payees' names, so she should not have been accountable for checks made payable to them. She also contended that she was only responsible for the two checks that totaled $11,275. (*See id*.)

The USPO issued an addendum to the PSR. (*See* doc. 101-1.) It concluded that Movant was

---

[1]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2]  Movant's husband, Kenneth Wayne Brown, was also charged by the same superseding indictment, tried with Movant, and convicted.

not accountable for checks made payable to individuals she did not recruit.  The addendum reflected that Movant was accountable for the two checks totaling $11,275, and 10 checks made payable to individuals linked to her totaling $80,779.97, for a total loss amount of $92,049.92.  (*See id*. at 5, ¶ 26.)  Based on an amended loss amount of more than $70,000, but less than $120,000, 8 levels were added to the base offense level of 6, which made the amended base offense level 14, and the total offense level 17, resulting in amended guideline range of 24 months to 30 months. (*See id*. at 6, ¶ 33, 41; *id*. at 7, ¶ 76.)

The government objected to the addendum to the PSR and argued that the original loss amount of $142,554.48 was correct.  (*See* doc. 107.)

At sentencing on May 18, 2012, the Court considered the loss amount, overruled Movant's objections, and sustained the government's objections. (*See* doc. 144 at 99-102, 103-08, 113-16.) It sentenced Movant to 34 months' imprisonment, with a two-year term of supervised release.  (*See* doc. 115 at 2-3.)

**B.**     **Direct Appeal**

On direct appeal, Movant challenged the sufficiency of the evidence to support her conviction, the three-level enhancement for her managerial role in the offense, and the attribution of loss amounts for which she was not responsible.  *United States v. Brown*, 727 F.3d at 333, 340.[3] The Fifth Circuit held that the evidence was sufficient to support the conviction and that the enhancement for her role in the offense was not erroneous.  *Id*. at 334-41.

The Fifth Circuit also held that the loss amount was properly attributed to Movant:

---

[3]  Movant and her husband wife both appealed, and their appeals were consolidated.

The Guidelines "create[ ] a sliding scale that increases the defendant's base offense level by zero to thirty [levels] depending on the amount of [actual or intended] loss." *United States v. John*, 597 F.3d 263, 279 (5th Cir. 2010) (citing U.S.S.G. § 2B1.1(b)(1)). They provide for a ten-level increase if the offense results in a loss of more than $120,000 but less than $200,000, U.S.S.G. § 2B1.1(b)(1)(F); and a twelve-level increase if the offense results in a loss of more $200,000 but less than $400,000, U.S.S.G. § 2B1.1(b)(1)(G). The district court adopted the PSR's calculation that Kenneth Brown was responsible for a $304,553.62 loss and Leah Brown was responsible for a $142,554.48 loss; found, based on their particular involvement in the conspiracy, that those loss amounts were "reasonably foreseeable" to each defendant; and adjusted upward their offense levels accordingly.

A district court's loss calculation, and its embedded determination that the loss amount was reasonably foreseeable to the defendant, are factual findings reviewed for clear error. *United States v. Hebron*, 684 F.3d 554, 560 (5th Cir. 2012) (loss calculation reviewed for clear error); *United States v. Hull*, 160 F.3d 265, 269 (5th Cir.1998) (foreseeability determination reviewed for clear error). The district court need only make "a reasonable estimate of the loss," *Hebron*, 684 F.3d at 560 (citing § 2B1.1 cmt. n. 3(C)), and, given the "unique position" it occupies to assess the loss amount, its loss calculation is entitled to appropriate deference, id.

. . .

The district court attributed to Leah Brown a loss amount of $142,554.48 based on the two checks she cashed and sixteen checks made payable to her friends, associates, and family members. She contests this amount on the sole basis that "[t]he evidence was insufficient to show [that she] acted in concert with others or participated in a jointly undertaken criminal activity." Her specific challenge that she is not liable for a loss amount of $142,554.48 because she was not involved in the conspiracy is foreclosed by our earlier conclusion that the evidence supports her conviction for conspiracy.

*Id*. at 342.  Movant's conviction and sentence were affirmed on appeal.  *Id*.

C.  **Substantive Claims**

In her § 2255 motion, Movant raised the following grounds:

(1)      Counsel was ineffective for not telling her that the government offered a plea bargain for probation;

(2)      She should have been sentence under the 2008 United States Sentencing Guidelines (USSG).

(3:14-CV-4031-D, doc. 2 at 4-5.)  The Government filed a response to the § 2255 motion on January 7, 2015. (*Id.*, doc. 5.)  Movant filed a reply brief on January 29, 2015, which clarified that in her second ground, she was alleging a violation of the Ex Post Facto Clause by the application of sentencing guidelines promulgated after the date of the offense. (*Id.*, doc. 6 at 1.)  Her reply brief raised new claims that trial counsel and appellate counsel were ineffective for failing to argue the applicable sentencing guideline and for failing to argue the issue of forfeiture.  (*Id*. at 2.)

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well-established that "a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).  Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error.  *Shaid*, 937 F.2d at 232.  However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of

judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).  The Government may also waive the procedural bar defense.  *Willis*, 273 F.3d at 597.

### III.  EX POST FACTO CLAUSE

Movant contends in her second ground that application of sentencing guidelines promulgated after she committed the offense violated the Ex Post Facto Clause.

A district court must apply the version of the sentencing guidelines in effect at the time of sentencing, unless the application of that version would violate the Ex Post Facto Clause of the Constitution.  *United States v. Myers*, 772 F.3d 213, 219 (5th Cir. 2014).  Such a violation would occur if a defendant is sentenced under guidelines promulgated after the offense was committed, and the newer version provides a higher guideline range than the version in effect at the time of the offense.  *Peugh v. United States*, 133 S.Ct. 2072, 2078 (2013).

Movant's offense ended in March 2008, and she was sentenced in May 2012 using the 2011 sentencing guidelines.  Because she does not explain how there was an ex post facto violation, her claim is conclusory.  Conclusory allegations are insufficient to obtain relief under § 2255.  *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989).

Moreover, there was no ex post facto violation.  Under both the 2008 and 2011 versions of USSG §2B1.1(a)(2), the base offense level is 6 where the maximum term of imprisonment is less than 20 years.  Under both versions of USSG §2B1.1(b)(1)(G), 10 levels are added where the loss is more than $120,000, but less than $200,000.  Under both versions of USSG §3B1.1(b), three levels are added for a supervisory role in a criminal activity that involves five or more participants.  Under both versions of USSG §5C1.1(f), based on a total offense level of 19 and a criminal history category of I, the guideline range is 30 months to 37 months.  The 2011 version of the USSG did

not provide a higher guideline range than the 2008 version.  The application of the 2011 version of the USSG did not violate Movant's rights under the Ex Post Facto Clause, and there was no error in using that version to sentence her.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art. VI.  The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*, 466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient

7

performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*. Under *Strickland*, the movant must show a reasonable probability that but for counsel's deficient representation, she would have prevailed on her appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of

reasonableness.' " *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462–63 (footnote and citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

## A.   <u>Plea Offer</u>

Movant contends in ground one that trial counsel was ineffective for failing to tell her that the government offered a plea bargain for probation. In *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399, 1408, 182 L. Ed. 2d 379 (2012), the Supreme Court held that defense counsel has the duty to communicate to his client formal favorable plea bargain offers. To show prejudice from ineffective assistance of counsel where a plea offer has lapsed because of counsel's deficient performance, a defendant must demonstrate a reasonable probability she would have accepted the earlier plea offer, that the plea would have been accepted by the trial court, and that it was a plea to a lesser charge or to a sentence of less prison time. *Id*. at 1409.

Movant alleges that she "believes there was a plea bargain" in which the government offered probation in return for a guilty plea. (*See* 3:14-CV-4031-D, doc. 2 at 4.) Movant does not allege as a factual matter that there was a plea offer, or any facts that lead her to believe there was a plea offer. The government argued that her conclusory claim did not present any details to show that an offer was made. (*See* 3:14-CV-4031-D, doc. 5 at 6.) Her reply brief did not discuss this claim and did not provide any additional fact allegations that show there was a plea offer or that show why she

believed there was a plea offer.  Her speculative, conclusory claim does not entitle her to an evidentiary hearing or to relief.  *See United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013); *United States v. Woods*, 870 F.2d at 288 n.3.

Movant has also not alleged prejudice because she does not assert that she would have accepted any such plea offer.  *See Missouri v. Frye*, 132 S.Ct. at 1408; *Chapman v. United States*, No. EP-14-CV-0062; 2015 WL 2339114, at *9 (W.D. Tex. May 13, 2015); *United States v. Hennis*, No. 3:14-CV-248, 2015 WL 251261, at *6 (S.D. Miss. Jan. 20, 2015).  At sentencing, counsel argued that she should receive credit for acceptance of responsibility.  Movant testified that she cashed two checks made out to her.  (*See* doc. 144 at 49.)  She denied involvement in or knowledge of the scheme or conspiracy, however, and she denied recruiting anyone in connection with the conspiracy.  (*See id.* at 49-67.)  The court denied her credit for acceptance of responsibility because she denied being guilty of the conspiracy.  (*See id.* at 112-13.)  Even after being found guilty and even though Movant sought credit for acceptance of responsibility, she denied under oath that she committed the offense of conspiracy.  Notwithstanding her failure to allege that she would have accepted a plea offer, the record suggests otherwise.

## B.    <u>Sentencing Guideline</u>

In Movant's reply brief, she raises new claims that trial counsel and appellate counsel were ineffective for failing to argue that the 2008 version of the USSG should have been applied instead of the 2011 version.

Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts requires that motions filed pursuant to 28 U.S.C. § 2255 "specify all the grounds for relief available to the moving party."  A movant may amend a § 2255 motion in accordance with Fed. R.

Civ. P. 15.  *See United States v. Saenz*, 282 F.3d 354, 355–56 (5th Cir. 2002).  New claims raised for the first time in a reply brief need not be considered by the Court, however.  *See United States v. Marroquin*, No. 3:08–CV–0489, 2009 WL 89242, at *4 (N.D. Tex. Jan. 12, 2009); *Bonds v. Quarterman*, No. 4:07–CV–674, 2008 WL 4367294, at *3 n. 1 (N.D. Tex. Sept. 24, 2008); *see also United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998) (holding that a district court does not abuse its discretion in refusing to consider new issues in a § 2255 reply brief after the government filed its response).  Accordingly, the Court may decline to consider these ineffective assistance of counsel claim asserted for the first time in her reply.

Even if considered, Movant's claims lack merit.  As discussed, the application of the 2011 version of the USSG did not violate the Ex Post Facto Clause and its use was proper.  Trial and appellate counsel were not ineffective for failing to raise a meritless argument.  *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (counsel is not ineffective for failing to raise a meritless argument); *United States v. Phillips*, 210 F.3d at 348 (counsel is not ineffective for failing to raise a meritless claim on appeal).  Also, Movant has not shown she was prejudiced because the guideline sentencing range was the same under both versions of the USSG.

## B.   <u>Forfeiture</u>

In her reply brief, Movant raises new claims that trial counsel and appellate counsel were ineffective for failing to argue the issue of forfeiture. As noted, the Court may decline to consider these ineffective assistance of counsel claims asserted for the first time in her reply.  *See United States v. Marroquin*, No. 3:08–CV–0489, 2009 WL 89242, at *4; *Bonds v. Quarterman*, No. 4:07–CV–674, 2008 WL 4367294, at *3 n. 1; *see also United States v. Cervantes*, 132 F.3d at 1111.

Even if considered, the claims lack merit.  Her conclusory claims do not entitle her to relief.

*United States v. Woods*, 870 F.2d at 288 n.3.  Moreover, the record does not show there was any

forfeiture.  Even if there were a forfeiture, she does not identify any arguments that counsel should

have made.

## V.  RECOMMENDATION

The motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 should be

**DENIED** with prejudice.

**SO ORDERED** this 7th day of November, 2016.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE